1

2

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

3 | ANTHONY FESTA,

4 |      Plaintiff,

5 | v.

6 | JUSTIN GORDON, et al.,

7 |      Defendants.

8

Case No.: 2:17-cv-00850-APG-NJK

**Order Granting in Part the Defendants' Motion for Summary Judgment**

[ECF No. 149]

9        Plaintiff Anthony Festa sues correctional officers Joshua Wikoff,[1] Justin Gordon, Edward

10 Provencal, and Michael Lavell under 42 U.S.C. § 1983 for violations of the First, Eighth, and

11 Fourteenth Amendments. Festa's claims arise from various incidents that occurred while he was

12 incarcerated at High Desert State Prison (HDSP). The defendants move for summary judgment,

13 arguing that (1) Festa failed to exhaust administrative remedies, (2) he fails to present sufficient

14 evidence to support his constitutional claims, and (3) the officers are entitled to qualified

15 immunity. Festa did not respond.

16        The parties are familiar with the facts, so I repeat them only as necessary to resolve the

17 motion. I grant in part the defendants' motion.

18 **I. LEGAL STANDARD**

19        Summary judgment is proper where a movant shows that "there is no genuine dispute as

20 to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

21

22

23

---

[1] I previously directed the parties to determine the correct spelling of this defendant's name and move to amend the caption if necessary. ECF No. 97 at 1 n.1. They did not do so despite my direction. According to his declaration, the proper spelling is Joshua Wikoff. ECF No. 149-1 at 193. I therefore will order the clerk of court to correct the caption.

56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  The moving party bears the initial burden of informing the court of the basis of its motion and the absence of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When the nonmoving party has the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *see also Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000) (stating that the moving party can meet its initial burden by "pointing out through argument . . . the absence of evidence to support plaintiff's claim").

Once the moving party carries its burden, the nonmoving party must "make a showing sufficient to establish the existence of [the disputed] element to that party's case." *Celotex*, 477 U.S. at 322.  I view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

**II.  FAILURE TO EXHAUST**

Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Exhaustion of administrative remedies prior to filing a lawsuit is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  The inmate therefore must "use all steps the prison holds out, enabling the

1  prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009).

2  The inmate must comply "with an agency's deadlines and other critical procedural rules because

3  no adjudication system can function effectively without imposing some orderly structure on the

4  course of its proceedings." *Woodford*, 548 U.S. at 90-91.

5        Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

6  Consequently, the defendants bear the burden of proving the inmate failed to exhaust an

7  available administrative remedy. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc).

8  If the defendants do so, then the burden shifts to the inmate to show "there is something in his

9  particular case that made the existing and generally available administrative remedies effectively

10  unavailable to him by showing that the local remedies were ineffective, unobtainable, unduly

11  prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir.

12  2015) (quotation omitted).  The defendants bear the "ultimate burden" of proving a failure to

13  exhaust. *Id.*

14        The defendants have failed to meet their burden on summary judgment.  Providing the

15  court with an unexplained grievance history and inviting the court to do its own review does not

16  meet their burden. *See U-Haul Co. of Nev. v. Gregory J. Kamer, Ltd.*, No. 2:12-cv-00231-KJD-

17  CWH, 2013 WL 4505800, at *2 (D. Nev. Aug. 21, 2013) ("Whether it is the familiar pigs

18  hunting for truffles metaphor or the spaghetti approach, the idea that courts will not perform the

19  work of representing the parties is clear.  When counselors fail to remember this fact, they waste

20  the time and resources of their clients and the Court." (simplified)).  Moreover, the defendants'

21  proposal that I perform a keyword search on the grievance history would not establish a failure to

22  exhaust.  As the defendants note in their motion, the grievance history is a summary of the

23  underlying grievances, so it may not contain the relevant key words. *See* ECF No. 149 at 9 n.3.

1 It is apparent from the grievance history that it is truncated because it contains ellipses or the

2 notation "(continued)," suggesting that further information exists that is not provided in the

3 summary. *See, e.g.*, ECF No. 149-1 at 144-45, 150-51, 155, 157.  A keyword search thus would

4 not necessarily demonstrate a failure to exhaust because the grievance history is incomplete.  I

5 therefore deny the defendants' motion for summary judgment based on failure to exhaust

6 available administrative remedies.

7 **III.  MERITS**

8      To establish liability under 42 U.S.C. § 1983, a plaintiff must show the deprivation of a

9 right secured by the Constitution and laws of the United States and that the deprivation was

10 committed by a person acting under color of state law. *Broam v. Bogan*, 320 F.3d 1023, 1028

11 (9th Cir. 2003).  The defendants do not contest that they acted under color of law.  Thus, the

12 dispute centers on whether they violated Festa's constitutional rights.

13      The defendants also assert they are entitled to qualified immunity.  To allay the "risk that

14 fear of personal monetary liability and harassing litigation will unduly inhibit officials in the

15 discharge of their duties," government officials performing discretionary functions may be

16 entitled to qualified immunity for claims made under § 1983. *Anderson v. Creighton*, 483 U.S.

17 635, 638 (1987).  Qualified immunity protects "all but the plainly incompetent or those who

18 knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  I determine whether the

19 defendant officers are entitled to qualified immunity by asking (1) whether the facts viewed in

20 the light most favorable to the plaintiff establish that the officers violated a constitutional right

21 and (2) "if so, whether that right was clearly established at the time of the event." *Rosenbaum v.*

22 *Washoe Cnty.*, 663 F.3d 1071, 1075 (9th Cir. 2011).  I may address these two prongs in any order

23

1  and, depending on the conclusion I reach, I need not address both prongs. *Pearson v. Callahan*,

2  555 U.S. at 223, 236-37 (2009).

3        A right is clearly established if "it would be clear to a reasonable officer that his conduct

4  was unlawful in the situation he confronted." *Wilkins v. City of Oakland*, 350 F.3d 949, 954 (9th

5  Cir. 2003) (emphasis omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).  I evaluate

6  whether a right is clearly established "in light of the specific context of the case, not as a broad

7  general proposition." *Saucier*, 533 U.S. at 201.  An officer will be entitled to qualified immunity

8  even if he was mistaken in his belief that his conduct was lawful, so long as that belief was

9  reasonable. *Wilkins*, 350 F.3d at 955.  "The plaintiff bears the burden of proof that the right

10  allegedly violated was clearly established at the time of the alleged misconduct." *Shooter v.*

11  *Arizona*, 4 F.4th 955, 961 (9th Cir. 2021) (quotation omitted).

12        **A.  Defendant Joshua Wikoff (counts 10 and 15)**

13        After screening of the third amended complaint, Festa was allowed to proceed against

14  Wikoff on a claim for First Amendment interference with the mail. ECF No. 59 at 16-17.  The

15  fourth amended complaint (FAC) added a First Amendment retaliation claim against Wikoff.

16  ECF No. 120 at 26-27.  Both claims are based on Festa's accusation that Wikoff placed Festa's

17  mail, which included legal filings to be mailed to the court, in a utility closet instead of mailing

18  it. *Id.* at 10, 22-23, 26-27.  Festa states that Wikoff did so in retaliation for Festa filing grievances

19  against Gordon. *Id.*

20        The defendants argue that Festa has not shown Wikoff interfered with his mail and that

21  even if Wikoff did so, a single incident cannot support an interference claim.  As to retaliation,

22  the defendants argue that there is no evidence that Wikoff knew about Festa's complaints or

23  grievances, so he could not have retaliated.  They further contend that Festa has no injury

1  because he admitted that his mail was not delayed.  Finally, they contend that Wikoff is entitled

2  to qualified immunity.

3                                1.  First Amendment Interference

4          Prisoners have a First Amendment right to "send and receive mail." *Hayes v. Idaho Corr.*

5  *Ctr.*, 849 F.3d 1204, 1209 (9th Cir. 2017) (quotation omitted).  However, because Festa did not

6  respond to the defendants' motion, he has not pointed to clearly established law that a single

7  instance of placing an outgoing letter in a utility closet that was then quickly retrieved and

8  mailed would support a First Amendment interference claim.  I therefore grant summary

9  judgment in Wikoff's favor on this claim.

10                                2.  First Amendment Retaliation

11          Prisoners have a First Amendment right to file prison grievances and civil lawsuits and to

12  be free from retaliation for doing so. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).  A

13  First Amendment retaliation claim has five elements.  First, the plaintiff must show he engaged

14  in activity protected by the First Amendment. *Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th

15  Cir. 2012).  Filing an inmate grievance is a protected activity. *Id.*

16          Second, the plaintiff must show the defendant took adverse action against him. *Id.*  "The

17  adverse action need not be an independent constitutional violation," and the "mere threat of

18  harm" may suffice. *Id.* (simplified).

19          "Third, the plaintiff must [show] a causal connection between the adverse action and the

20  protected conduct." *Id.*  A close proximity in time between the protected activity and the adverse

21  action "can properly be considered as circumstantial evidence of retaliatory intent." *Pratt v.*

22  *Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).

23

1       Fourth, the plaintiff must show that the defendant's acts "would chill or silence a person

2 of ordinary firmness from future First Amendment activities." *Watison*, 668 F.3d at 1114

3 (quotation omitted).  The plaintiff need not show that the defendant actually suppressed his

4 speech. *Rhodes*, 408 F.3d at 568.  Evidence "that his First Amendment rights were chilled,

5 though not necessarily silenced, is enough . . . ." *Id.* at 569.  However, the plaintiff must show

6 the harm he suffered was "more than minimal." *Watison*, 668 F.3d at 1116 (quotation omitted).

7       Finally, the plaintiff must show that the defendant's retaliatory act "did not advance

8 legitimate goals of the correctional institution." *Id.* (quotation omitted).  To establish this

9 element, the plaintiff must show the defendant acted with a retaliatory motive and that the

10 defendant's actions "were arbitrary and capricious," or "were unnecessary to the maintenance of

11 order in the institution." *Id.* (quotation omitted).

12       In August 2018, Festa filed a grievance claiming that another inmate told him that his

13 legal mail was placed in a utility closet. ECF No. 149-1 at 46.  Festa states that he filed an

14 emergency grievance regarding the issue and gave it to correctional officer Peterson, who

15 "retrieved [Festa's] legal mail and also turned in [the] legal mail." *Id.*  According to Festa's

16 grievance, he spoke with Wikoff about his complaint against Gordon some time before the mail

17 incident. *Id.* at 43.  He states that about two days prior to this incident, he told an inspector

18 general investigator about his conversation with Wikoff. *Id.*

19       According to Wikoff, he did not place Festa's mail in a utility closet. *Id.* at 194.  Rather,

20 he placed it on the desk in the unit office so that swing or graveyard shift officers could place it

21 in the outgoing mail bags. *Id.* at 39.  Wikoff denies that he knew about Festa's complaints

22 against Gordon and denies that he retaliated against Festa. *Id.* at 194.

23

1      Even viewing the evidence in the light most favorable to Festa, Festa has not pointed to

2 evidence raising a genuine dispute that there is a causal connection between his protected activity

3 and Wikoff's actions.  Festa has not presented direct evidence of retaliation, such as Wikoff

4 making a statement suggesting a retaliatory motive.  Nor has he shown a temporal proximity

5 between any protected activity and the mail incident.  He does not identify the particular

6 protected activity at issue or when it occurred.[2]  Although he states in his grievance that Wikoff

7 at some undisclosed time asked him about his complaints against Gordon, there is no evidence as

8 to when that happened in relation to the mail incident.  Festa states the mail incident happened

9 two days after Festa told an investigator about his conversation with Wikoff, but there is no

10 evidence that Wikoff knew about this conversation.

11      Moreover, by Festa's own grievance, he suffered minimal, if any, harm.  He states that

12 after he filed an emergency grievance, Peterson retrieved his mail and turned it in for mailing.  I

13 therefore grant summary judgment in Wikoff's favor on this claim.

14      **B.  Defendant Justin Gordon (counts 1, 3, 5, 8, 12, and 15)**

15            1.  Equal Protection

16      Count one of the FAC alleges that Gordon violated the equal protection clause by

17 searching Festa's belongings, displaying a naked picture of Festa's boyfriend, and making

18 demeaning comments about Festa being gay. ECF No. 120 at 11.  The defendants argue that this

19

20 [2] Festa first complained about Gordon in late 2016. ECF No. 149-1 at 6.  He filed another grievance against Gordon in January 2017. *Id.* at 28.  He filed the complaint in this case in

21 March 2017. ECF No. 1-1.  The mail incident occurred in July 2018. ECF No. 149-1 at 46. There is insufficient temporal proximity between these events to raise an inference of retaliation.

22 *See McCollum v. Cal. Dep't of Corr. & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011) (no inference of causal connection where nearly three years passed between protected activity and alleged

23 retaliatory conduct); *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003), *as amended* (Jan. 2, 2004) (in Title VII context, no inference of causal link where protected activity occurred 13 months before the alleged adverse action).

1   claim fails because there is no evidence Gordon searched Festa's cell because Festa was gay,

2   Gordon was required to secure the area while the medical team assisted Festa, and demeaning

3   comments cannot support a constitutional violation.  The defendants also contend that Gordon is

4   entitled to qualified immunity.

5        To establish an equal protection claim, a plaintiff must present evidence from which a

6   reasonable jury could find that the defendant acted "with the intent or purpose to discriminate

7   against [him] based upon membership in a protected class," or that the defendant purposefully

8   treated him differently than similarly situated individuals without a rational basis for the

9   disparate treatment. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *see also Vill.*

10  *of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Classifications based on sexual orientation

11  are subject to heightened scrutiny. *Latta v. Otter*, 771 F.3d 456, 468 (9th Cir. 2014).

12       Even viewing the evidence in the light most favorable to Festa, he has not pointed to

13  evidence that would raise a genuine dispute that Gordon searched his cell because he is gay.

14  Rather, Festa alleges that he suffered a medical episode, and when he came to, he saw Gordon

15  searching his cell.  There is no evidence that prior to this cell search, Gordon knew or had reason

16  to suspect that Festa was gay.  Consequently, there is no evidence that the cell search was

17  motivated by Festa's sexual orientation.  And because Festa did not respond to the defendants'

18  motion, he has not pointed to clearly established law that Gordon's alleged acts of displaying the

19  photo and using derogatory terms suffice to support an equal protection claim.  I therefore grant

20  summary judgment in Gordon's favor on Festa's equal protection claim.

21                    2.  Eighth Amendment Deliberate Indifference to Medical Needs

22       Festa's Eighth Amendment claim based on deliberate indifference to medical needs is

23  grounded in Festa's statement that when he suffered a medical episode, Gordon did not attend to

9

1 his needs and instead searched his cell. ECF No. 120 at 3.  The defendants argue this claim fails

2 because I previously dismissed it and there are no new allegations that would support it.  They

3 also argue Festa admitted that medical staff was attending to his medical needs at the time of the

4 incident.  Finally, the defendants contend that Gordon is entitled to qualified immunity.

5     I previously dismissed Festa's Eighth Amendment claim against Gordon because he had

6 not adequately alleged facts sufficient to show Gordon was deliberately indifferent.  Specifically,

7 I noted that Festa did "not allege that Gordon was part of the medical team, that Gordon believed

8 that he was supposed to be providing medical care, that no one on the medical team addressed

9 Festa's medical problems, or that Festa suffered harm because Gordon searched his cell instead

10 of providing medical aid." ECF No. 59 at 7.  The FAC does not cure any of these deficiencies.

11 Although the FAC alleges Gordon was first on the scene, it does not allege how long it was

12 before the medical team arrived, what Gordon should or could have done to address Festa's

13 medical need given that he is not a member of the medical staff,[3] or that Festa suffered any harm

14 by Gordon waiting for the medical team to assist Festa. *See* ECF No. 120 at 3.  Moreover,

15 because Festa did not respond to the summary judgment motion, he has not pointed to clearly

16 established law that Gordon's conduct would amount to an Eighth Amendment violation.  I

17 therefore grant summary judgment in Gordon's favor on this claim.

18         3.  Eighth Amendment Based on Verbal Threat

19     The defendants argue that Festa's Eighth Amendment claim against Gordon based on an

20 alleged verbal threat to Festa fails because a threat does not support a constitutional violation.

21 The defendants also contend that Gordon is entitled to qualified immunity.

22

23
[3] *See* ECF No. 149-1 at 216 (Gordon stating that he is not a member of the NDOC medical staff, does not practice medicine, and holds no medical licenses or degrees).

NJK   Document 168   Filed 08/22/22   Page 11 of 17

1    Because Festa did not respond to the defendants' motion, he has not pointed to clearly

2  established law that a correctional officer telling an inmate that "bad things" would happen and

3  allegedly threatening his life[4] amounts to an Eighth Amendment violation.  I therefore grant

4  summary judgment in Gordon's favor on this claim.

### 4.  First Amendment Retaliation - Hearing

6    The defendants argue that Festa's First Amendment retaliation claim against Gordon fails

7  because Festa has not identified an adverse action Gordon took against him, there is no

8  retaliatory motive, and there is no evidence of temporal proximity to support causation.  They

9  also argue there was a legitimate correctional goal of Gordon presiding over an unrelated

10  disciplinary hearing and then recusing himself once he learned that Festa had filed a complaint

11  against him.  Finally, the defendants contend that Gordon is entitled to qualified immunity.

12    Gordon denies that he knew about Festa's complaint against him prior to the disciplinary

13  hearing on an unrelated matter. ECF No. 149-1 at 216.  Festa presents no contrary evidence.

14  Gordon could not retaliate against Festa for filing a complaint if Gordon was unaware of that

15  complaint. *See Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) (noting, in the Title

16  VII context, that evidence that the defendant was aware that the plaintiff had engaged in the

17  protected activity is "[e]ssential to a causal link").  Moreover, Festa does not identify an adverse

18  action in relation to the disciplinary hearing.  By Festa's own allegations, once Gordon was

19  advised that Festa had filed a complaint against him, he declined to preside over the hearing and

20  ordered Festa removed from the room. ECF No. 120 at 6-7.  Finally, Festa has not identified

21

22

23

---

[4] Festa does not specify in the FAC what he means by Gordon threatening his life and whether that was something beyond stating that "bad things" would happen to Festa.

11

1  clearly established law that Gordon's conduct violated the First Amendment.  I therefore grant

2  summary judgment in Gordon's favor on this claim.

3                    5.  First Amendment Retaliation - Threats

4         Festa states that a few days after Gordon ordered him out of the room at the disciplinary

5  hearing, Gordon came by his cell and began kicking his cell door. ECF No. 120 at 7.  According

6  to Festa, Gordon stated he hated "faggots" and told Festa that if Festa continued to pursue

7  grievances, "bad things will happen to [Festa]." *Id.*  Festa states that he was afraid for his safety

8  and called an emergency hotline and filed an emergency grievance. *Id.*  He states that Gordon

9  continued to seek him out "away from [Gordon's] geographical area of responsibilities" at the

10 prison, make derogatory statements about his homosexuality, and threaten "bad things." *Id.*  He

11 also states that Gordon "threatened Festa with his life if he did not stop with the complaints." *Id.*

12 at 8 (simplified).

13       The defendants argue that Festa's complaint under the Prison Rape Elimination Act

14 (PREA) does not constitute protected activity.  They also argue Festa does not identify an

15 actionable adverse action and there is no evidence of a causal connection between the protected

16 activity and the alleged adverse action.  The defendants contend Festa cannot show that a person

17 of ordinary firmness would have been chilled or that there was no legitimate correctional goal.

18 The defendants also contend that Gordon is entitled to qualified immunity.

19       Even if a PREA complaint does not constitute protected activity under the First

20 Amendment, Festa states in his verified[5] FAC that he engaged in protected activity by filing an

21 emergency grievance against Gordon and Gordon thereafter continued to threaten him. ECF No.

22

---

23 [5] "A plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).

120 at 7-8, 32.  Viewing the evidence in the light most favorable to Festa, a reasonable jury

could find an adverse action based on Gordon's threats that bad things would happen to Festa if

he continued to pursue his complaints. *See Rhodes*, 408 F.3d at 568 (finding an adverse action

based on, among other things, the officers' threats to transfer the inmate to another institution);

*Watison*, 668 F.3d at 1114-15 (stating the "mere threat of harm" may suffice  as an adverse

action); *Brodheim v. Cry*, 584 F.3d 1262, 1266, 1270-71 (9th Cir. 2009) (holding that a

reasonable jury could find that an officer's "warn[ing]" that the inmate to "be careful" what he

writes in grievances was an adverse action for First Amendment retaliation purposes).  A

reasonable jury also could find Gordon was motivated by retaliatory animus if they believe

Festa's statement that Gordon explicitly mentioned his complaints while threatening him.  A

reasonable jury likewise could find that a correctional officer's threat that bad things would

happen to the inmate if he did not comply with demands to cease his protected activity would

chill a person of ordinary firmness. *See Watison*, 668 F.3d at 1114-15; *Brodheim*, 584 F.3d at

1266, 1270-71.  Festa states in his verified FAC that he was afraid for his safety and filed an

emergency complaint and grievance in response to Gordon's threats, but the threats continued.

ECF No. 120 at 7-8.  A reasonable jury could find this shows Festa suffered more than minimal

harm.  Finally, a reasonable jury could find that threatening an inmate to stop filing grievances

serves no legitimate correctional goals. *See Watison*, 668 F.3d at 1116 ("[T]hreatening to punch

a prisoner serves no penological interest.").

     Although Festa did not point to clearly established law in support of this claim, I cited

*Rhodes* in prior screening orders and the defendants cited the case in their summary judgment

motion. *See* ECF Nos. 15 at 6; 59 at 9-10; 149 at 12.  Gordon therefore is not entitled to qualified

immunity for this claim.  As a result, I deny the defendants' motion on this claim.

**C. Defendant Edward Provencal (counts 4 and 15)**

Count four of the FAC alleges Provencal was deliberately indifferent to Festa's safety by making him house in an upstairs cell despite his seizure disorder. ECF No. 120 at 14-15. Count four also alleges Provencal was deliberately indifferent to the unsanitary conditions in the cell to which he ordered Festa to move. *Id.* Festa states the cell had urine and feces on the walls and bunk, and he was given no cleaning materials. *Id.* Count fifteen alleges Provencal engaged in this conduct in retaliation for Festa filing grievances and complaints. *Id.* at 26-27.

The defendants argue that Festa's claims against Provencal fail because there is no evidence that Provencal violated his rights where Festa admitted guilt to the violation for which Provencal wrote him up. The defendants also argue that there is no evidence the cell to which Festa was going to be transferred was unsanitary and, in any event, Festa does not state how long he was exposed to unsanitary conditions. The defendants also contend that Provencal is entitled to qualified immunity.

I previously denied Festa's First Amendment retaliation claim with prejudice. ECF No. 59 at 10. Festa did not move for reconsideration of that ruling. That claim therefore is no longer pending.

As for the deliberate indifference claim, Festa does not point to clearly established law that would have put Provencal on notice that he was violating Festa's Eighth Amendment rights by housing him on the second floor where the only restriction in the prison's system was for a lower bunk. *See* ECF No. 149-1 at 10. Additionally, Festa does not state how long he was exposed to the unsanitary conditions in the cell. *See Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1314-15 (9th Cir.), *opinion amended on denial of reh'g*, 75 F.3d 448 (9th Cir. 1995) (stating that temporary exposure to unsanitary conditions generally does not rise to the level of a

1  constitutional violation).  Finally, Festa does not point to clearly established law to support this

2  claim, particularly because he does not state how long he was exposed to the condition.  I

3  therefore grant summary judgment in Provencal's favor on this claim.

4  **D.  Defendant Michael Lavell (counts 2, 7, 11, and 15)**

5  Festa asserts equal protection, Eighth Amendment, and First Amendment retaliation

6  claims against Lavell related to an incident where Lavell did not allow Festa to use the restroom

7  for approximately 90 minutes and made Festa sit in his soiled clothing for two days. ECF No.

8  120 at 8-9, 12.  According to the FAC, Lavell told Festa he was aware of who Festa was and

9  what he did, referring to Festa's grievances and lawsuits, and that was why Lavell was denying

10  Festa use of the restroom. *Id.*

11  The defendants argue that Lavell is entitled to qualified immunity because Festa has not

12  identified clearly established law that a 90-minute denial of access to the restroom violates the

13  Constitution.  The defendants also argue that Lavell is entitled to qualified immunity on the equal

14  protection claim.

15  1.  Equal Protection

16  I previously ruled that Lavell is entitled to qualified immunity on the equal protection

17  claim. ECF No. 97 at 9.  Because Festa has not responded to the defendants' motion, he has not

18  identified any newly alleged facts or pointed to any clearly established law that would change

19  my prior ruling.  As a result, I grant summary judgment in Lavell's favor on this claim.

20  2.  Eighth Amendment

21  I previously ruled that Lavell is entitled to qualified immunity on the Eighth Amendment

22  claim. ECF No. 97 at 7-8.  I noted that Festa had not alleged in his prior third amended complaint

23  how long he was made to sit in his soiled clothing. *Id.* at 7 n.4.  Festa alleged in the FAC that he

1  was made to sit in his soiled clothing for two days. ECF No. 120 at 9.  But because Festa has not

2  responded to the defendants' summary judgment motion, he has not pointed to clearly

3  established law that would have put Lavell on notice that his conduct would violate Festa's

4  Eighth Amendment rights.  I therefore grant summary judgment in Lavell's favor on this claim.

5  3.  First Amendment Retaliation

6      I previously ruled that Festa had failed to allege retaliation against Lavell because he did

7  not allege facts to show Lavell knew about Festa's complaints against Gordon or that Lavell

8  denied access to the restroom in retaliation for those complaints. ECF No. 97 at 9-10.  I granted

9  Festa leave to amend this claim. *Id.* at 10.  In the FAC, Festa alleges that Lavell made comments

10  to Festa that suggested Lavell was aware of his complaints and was denying him access to the

11  restroom because of those complaints. ECF No. 120 at 8, 12 (stating that Lavell told Festa "we

12  know who you are and what you did, going around suing people, you don't get to use the

13  restroom").  The defendants did not move for summary judgment on this claim, so it remains

14  pending.

15  **IV.  CONCLUSION**

16      I THEREFORE ORDER the clerk of court to correct the caption by replacing defendant

17  "Wykaff" with Joshua Wikoff.

18  / / / /

19  / / / /

20  / / / /

21  / / / /

22  / / / /

23  / / / /

16

1    I FURTHER ORDER that the defendants' motion for summary judgment **(ECF No. 149)**

2 **is GRANTED in part.**  The only remaining claims are for First Amendment retaliation against

3 defendant Justin Gordon based on threats and First Amendment retaliation against defendant

4 Michael Lavell.  The clerk of court is instructed to terminate defendants Joshua Wikoff and

5 Edward Provencal as defendants.

6        DATED this 22nd day of August, 2022.

7

8                                           _____
                                            ANDREW P. GORDON
9                                           UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

17